O’Connell, J.
The record shows that one John Denehy died intestate in Cumminsville, Cincinnati, Hamilton county, Ohio, on or about *407 March 5th, 1905. John. F. Hickey was duly appointed and qualified as the- administrator of his estate.
The deceased was unmarried and left no next of kin residing in this county, and, so far as known at the time, in this country. Among the effects of the decedent, the administrator found certain letters purporting to be from a sister in Cork, Ireland, and apparently in response to letters from the decedent. The administrator took steps to locate this sister and such other relatives as might be living, and at length located one Edward Sweeney, who, from certain depositions taken in Cork, Ireland, and filed in the case, appears to be the only living heir at law of this deceased sister, Mary Sweeney, and also if of her, the only heir at law of the decedent, John Denehy.
In the meantime the plaintiff, Catherine Riordan, had brought suit in partition to sell the real estate of the decedent, John Denehy, which comprised two certain tracts of land in Cumminsville. She alleges she is a sister of the decedent, and makes parties to her suit the children of her deceased brothers and sisters, some residing in Cork, Ireland, some in New York and others who reside elsewhere. Depositions have been taken on their behalf. In her own deposition she claimed to be the sister of John Denehy, the decedent, who -had resided in Cork before emigrating to America.
The claims of the two sets of claimants are irreconcilable, because the sister, Mary, of the John Denehy, referred to by Catherine Riordan, is a totally different person from the sister Mary of the decedent who wrote the letters found by the administrator. One is identified as the Mary Sweeney, of 9 Step Lane. The other is- a Mary Muleahy, the mother of four daughters, a different family from the one described in the letters.
While the investigation was being conducted by the administrator and before he ascertained the present residence of the family of Mary Sweeney, the suit brought by Catherine Riordan had, through the ordinary steps in such cases, proceeded to judgment with a decree for sale. Subsequently, by leave of court, Edward Sweeney was made party defendant with leave to plead, and in his answer sets out his claims to the estate *408 and prays that the petition and cause of Catherine Riordan et al be dismissed as they have no interest in the property.
Objection was made by counsel for plaintiff to these certain letters offered by defendant, Edward Sweeney, and admitted in evideneé. Their dates were:
1. November 6th, 1874. In this, addressed to “Dear Brother,” but unsigned, the statement .is made, “Pear Brother, we are living in the old house at home still in Step Lane where you left us.”
2. February 17th, 1880. This was addressed to “My Dear Brother,” signed “From your affectionate sister, Mary Sweeney. So direct your letter to number nine Step Lane, off Shandon Street, Cork, Ireland.” (to) John Denehy.
'3. February 9th, 1881. This was addressed to “My Dear Brother,” signed “from your affectionate sister Mary Sweeney. So direct your next letter to No. 9 Step Lane.”
4. March 24th, 1880. This was addressed to “My Dear Brother,” signed “from your loving sister Mary Sweeney. Write soon. Direct your letter to No. 9 Step Lane, off Shandon Street, Cork.”
Each letter, except the one of February 17th, 1880, acknowledges the receipt of a letter from the brother. There was evidently a family correspondence.
It will be observed that at the time of trial, December 23d, 1909, one letter was thirty-five years old, one was twenty-nine years and some ten months, one was twenty-nine years and nine months and one was twenty-eight years and ten months old.
As shown by the evidence they were found by the administrator, Rev. John F. Hickey, in the drawer of the dressei of the decedent, immediately following his death. Two of the letters were found in the envelopes, two were without an envelope, and they were all wrapped in one bundle. The envelopes had the Cork and New York post marks.
I think they are clearly admissible in evidence as ancient documents and tending to prove the place of residence and the relationship to John Denehy of the person writing them. The time, place and manner of their discovery bring them within the rule laid down by our Supreme Court, and the authorities *409 on the subject of the admissibility of writings in evidence as ancient documents or ancient writings.
In the case of Bell v. Brewster, 44 O. S., 690, syllabus 3 is as follows:
“A letter purporting to have been written more than thirty years ago belongs to the class of instruments known as ancient documents; and where produced from the family papers of the person to whom it had been addressed, is presumed to have been, written by the person by whom it purports to have been written; and the writer and the person addressed being dead, is admissible in evidence without further proof of its authenticity.
“Syl. 4. The proper repository of an ancient document is the place where papers of its kind are usually deposited.”
• The ordinary and proper place for letters received by a person in ordinary circumstances in life can’be held to be in a dresser or bureau drawer in his home. In any event, they were in the possession of the deceased and in the place where he chose to keep them.
The court says on page 694:
“But more or less credit has always been attached to ancient documents without other proof of their authenticity than that of their production from proper depositories. Where any document purporting or proved to be thirty years old is produced from its proper custody, it is presumed that the signature, and every other part of such document which purports to be in the handwriting of any particular person, is in that person’s handwriting.
“This exception to the-general rules .of evidence rests upon a conceded necessity, and applies not only to such instruments as are of a formal character, such as wills, bonds, and other deeds, but also to receipts, letters, entries and all other ancient writings.
“Thus in Bere v. Ward, on the trial of an issue as to the legitimacy of a particular person, a very .old letter, purporting to bear the signature of the head of the family, and brought from among the title deeds kept at the family seat, was admitted as genuine, without further prooí of handwriting, by Dallas, C. J., and also by Lord Tenterden on a second trial. This ruling was followed in Doe d. Thomas v. Beynon, 12 A. & E. 431, where certain old letters, were admitted in evidence *410 upon the issue in the case, whether the person claiming as devisee of the writer .was the person intended. They were admitted without proof of handwriting or other proof or their genuineness than that they were found among the papers of the person to whom they had been addressed at the time of her death.”
In Phillips oh Evidence, 5th American Edition, Vol. II, *475, we find the following statement:
“There are several exceptions to the rule which requires that an attested document must be proved by attesting witness; and these will now be considered:
“First. Exception to the rule where writings are thirty years old. It is a rule that if an instrument is thirty years old, it may be admitted in evidence without .any proof of its execution ; such instrument is said to prove itself. This rule appears to be founded on the general experience of the inconvenience and inutility of searches after attesting witnesses to ancient deeds, and on the expediency of fixing some definite limit, to searches of this1 nature. The danger arising from such relaxation of general principles is in some measure diminished by the operation of the rule which requires documents to be produced from their proper place of custody, or at least, • from a place of deposit, which if not one which would be strictly required by law, would be one where in the ordinary course of things the documents, if genuine, might reasonably be expected to be found. * # *
“The exception above mentioned applies not only to such instruments as are generally of a formal character, such as wills, bonds, and other deeds, but also to receipts, letters, entries and all other ancient writings, or the execution or writing of them need not be proved provided they have been so .acted upon or brought from such a place-as to afford ‘a reasonably presumption that they were honestly and fairly obtained and preserved for use and are free from suspicion of dishonesty.’ ”
However, we find that the period of thirty years has not in all eases been absolutely adhered to. We find that in Pennsylvania a paper writing dated twenty-eight years and five months before the trial was admitted in evidence without requiring an effort to have been m$i,de to find the attesting witness. Everly v. Stoner, 2 Yeate’s Rep., 122.
The reason that thirty years is mentioned as a limit is because at common law “thirty years quiet and continued posses *411 sion of the land under a deed is sufficient to dispense with proof of the execution of the deed itself.” This exception gradually-extended from deeds to other paper writings.
In Nowlin v. Burwell, 75 Va., 551, it was held that possession for thirty years need not be shown in order to make a power of attorney admissible in evidence as an ancient writing. The syllabi in that case are as follows:
Syl. 1. “Affirming Caruthers v. Eldridge, 12 Gratt., 670, that it is not absolutely necessary to show thirty years’ quiet and continued possession of land under a deed in order to dispense with proof of its execution.”
Syl. 2. “If the party relies alone upon the possession as proof of the authority of the instrument, -such possession must, as a general rule, have continued not less than thirty years along with the deed. But in the absence of such possession, other circumstances are admissible to raise a presumption in favor of the genuineness of the instrument.”
Syl. 3. “One of such circumstances often relied on is the fact that the instrument is 'procured from the proper custody, and is otherwise free from just suspicion. ’ ’
Syl. 4. “Documents are said to be in the proper custody if they are in the place in which and under the care of the person with whom they should naturally be.” * * #
The fact that the letters in the case at bar are what may be termed a series of letters bearing date of from twenty-nine to thirty-five years old and having .all the appearance of age, found “wrapped in one bundle” in the dresser drawer of. the decedent by his administrator, immediately following his death and before any one else had entered the house, justifies their admission as evidence. The administrator was also his pastor and friend, and his testimony is unimpeachable.
The depositions taken on behalf of Edward Sweeney show that No. 9 Step Lane has long been dilapidated and abandoned as a place of residence, but with the exhibits, identify him- as the son and sole heir at law of the Mary Sweeney who lived at 9 Step Lane, Cork, Ireland, at the time the letters to the decedent, John Denehy, were written. They also prove that this Mary Sweeney was the sole heir at law of her brother, John'Denehy. The letters identify the said Mary Sweeney as the sister of the *412 decedent, John Denehy. The evidence, therefore, shows that Edward Sweeney is the owner of this real estate, and that the plaintiff, Catherine Eiordan (who has died since the filing of the petition) and her next of kin .and the children of her deceased brothers and sisters have no interest in this property.
It being shown that they have no right, title, or interest in the property, the prayer of the answer of Edward Sweeney that he be decreed the sole heir of John Denehy, and that the petition of the plaintiff be dismissed, should be granted.
As he is the sole owner of the realty, a suit in partition can not lie.